IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| MARCUS DENNIS | * | |
| Plaintiff | * | |
| v. | * | Civil Action No. JKB-16-293 |
| WARDEN, et al. | * | |
| Defendants | * | |

\*\*\*

## MEMORANDUM

Defendants filed a motion to dismiss or for summary judgment in response to plaintiff's claim that he was subjected to excessive force in violation of the Eighth Amendment's prohibition against cruel and unusual punishment. ECF 19. Plaintiff Marcus Dennis was advised of his right to file an opposition response to the motion and of the consequences of failing to do so. ECF 20. Dennis sought and was granted additional time to respond (ECF 21 and 22), but has filed nothing further in this case. The court finds a hearing unnecessary to resolve the matters pending before it. *See* Local Rule 105.6 (D. Md. 2016). For the reasons that follow, defendants' unopposed motion, construed as a motion for summary judgment,[1] shall be granted and judgment entered in their favor.

### Background

In his complaint as supplemented, Dennis alleges that on January 11, 2016, he and other inmates who were also incarcerated at Maryland Correctional Training Center (MCTC) were assaulted by correctional officers following a three-day hunger strike. ECF 1 at p. 1. He claims that he was "maced" and assaulted and that all of the inmates involved were transferred to

---

[1] Defendants' dispositive submission will be treated as a Motion for Summary Judgment under Federal Rule of Civil Procedure 56 because materials outside the original pleadings have been considered. *See Bosiger v. U.S. Airways*, 510 F.3d 442, 450 (4th Cir. 2007).

different institutions.[2] *Id.* Dennis claims he suffered a broken nose, cracked rib, and serious injuries to his left ankle, right hamstring, neck, and back, but received no medical attention for those injuries. *Id.* Dennis states that he was found not guilty of an institutional infraction he was issued as a result of the events occurring on January 11, 2016. *Id.*

After this court directed Dennis to supplement his original pleading, he filed a supplemental complaint asserting that the officers involved in the assault were Lt. McKenzie, Sgt. B. Younker, Officer M. Hollar, Sgt. Bair, Sgt. G. Durbrow, Officer Fiorita, and Officer H. Carr. ECF 3. In his second supplemental complaint, Dennis explains that on January 11, 2016, he was housed on the segregation unit at MCTC when the officers formed an extraction team to "do a force count." ECF 4 at p. 3. Dennis claims the named officers came into his cell "and many others" and beat Dennis and his cellmate. *Id.*

Defendants provide copies of reports prepared following the January 11, 2016, incident in support of their dispositive motion. ECF 19 at Ex. 1 (Serious Incident Report, Use of Force Report). A narrative is provided in the Serious Incident Report that summarizes the incidents occurring prior to the use of force employed against Dennis. *Id.* at pp. 5 – 6. The report states that "an incident occurred on C Tier in Housing Unit 7 that spanned the duration of the 8 – 4 and 4 – 12 shifts." *Id.* at p. 5. The incident began at 8:45 a.m. when officers attempted to deliver meals to inmates on the segregation tier, a process referred to as "feed-up." *Id.* When this process began, inmates on the tier began yelling to other inmates on the tier to refuse their lunch meals. *Id.* Meals were accepted in only six of the cells. *Id.*

When Correctional Security Chief George Morris was briefed about the incident by Sgt. Harold Hall and Lt. Joseph Hewitt, the three officers decided to advise the dietary department to

---

[2] Dennis was transferred to Roxbury Correctional Institution. *See* ECF 19-1 at p. 1.

add cookies to the bagged meals being delivered to the inmates. *Id*. No explanation is provided as to why this decision was made.

At 9:30 a.m., Sgt. Hall and Lt. Hewitt spoke with Dennis, who was among those who had refused to accept the meal offered initially. Dennis told Hall and Hewitt that the reason the meals were refused is they "lacked protein." ECF 19 at Ex. 1, p. 5. Hall and Hewitt told Dennis that the same meal was being provided to the general population and advised him of the decision to add cookies to the segregation-bagged meals. *Id*. While Dennis told the officers he would let others know this information, he advised that the meals would probably be rejected again. *Id*.

At approximately 10:00 a.m., after the segregation tier inmates were told about the addition of cookies to the meals being offered, the inmates began to plug their toilets and sinks to flood the tier. Correctional staff went from cell to cell identifying which inmates were participating in this conduct and shut off the water to the cells where it was occurring. *Id*.

At 10:30 a.m., Amber Knoll, LPN, came to the segregation tier to distribute medication to the inmates. To ensure the safety of staff, inmates were ordered to the back of their cells while medication was placed in the cell. Knoll was not permitted onto the tier at that time; there is no explanation regarding who delivered medication in her place. ECF 19 at Ex. 1, p. 5.

Institutional infractions were issued to the inmates who engaged "in the disruptive behavior" and an institutional count was conducted at 3:00 p.m. without incident. *Id*. During the count conducted at 4:10 p.m. by the 4 – 12 shift officers, "multiple inmates on C Tier refused to uncover their cell windows and only 5 cells accepted their evening meals." *Id*. Lt. William McKinley advised Capt. Jeffrey Bradshaw of the situation and Bradshaw notified Warden Morgan who ordered the assembly of a team to conduct a forced count. *Id*.

The forced count team assembled at approximately 5:30 p.m. and included McKinley, Lt. Hendershot, Sgt. Younker, Sgt. Bair, Sgt. Durboraw, Officer Hollar, Officer Fiorita, and Officer Carr. ECF 19 at Ex. 1, p. 5. In addition to the correctional staff noted, Christina Poff of the psychology staff was present for purposes of "Confrontational Avoidance" protocol. *Id*.

At the first three cells the team approached, the inmates who occupied the cells did not cooperate with orders. First, inmate Andre Williams refused to uncover his cell window despite orders to do so. Force was used to gain his compliance and he was handcuffed and removed from his cell to another "secure location in Housing Unit 7." *Id*.

At the second cell, the two occupants, inmates Charles Fry and Damon Alexander, refused to uncover the cell window and the cell door was ordered to be opened. When the door was opened, Alexander threw his mattress at the team members and began striking Sgt. Younkers in the head. *Id*. Fry also threw his mattress at the team members and resisted; both inmates were handcuffed and escorted away from the tier. *Id*.

At the third cell, inmates Gregory Laisure and Derrick Sanchez refused to uncover the cell window and the door was ordered to be opened. Once the door was open, Laisure charged the team members and made it out onto the tier where he was "put on the floor and handcuffed." ECF 19 at Ex. 1, p. 6. Sanchez also rushed the officers and McKinley deployed a short burst of pepper spray toward his face. *Id*. Sanchez was then handcuffed and both inmates were removed from the area. *Id*.

In light of the events that occurred with the first three cells approached, Captain Bradshaw was contacted and a decision was made that any further actions by inmates that required force would be in the form of cell extractions. Following that decision, Dennis's cell was approached. Dennis informed officers that "he had his cellmate, inmate Thomas Gallagher,

tied up and that he was going to rape him." ECF 19 at Ex. 1, p. 6.  The cell door was opened, the team entered, and "both inmates were successfully extracted" and taken to another location in the housing unit.  *Id.*

In the Use of Force Report regarding Dennis's extraction from his cell, more details are provided.  ECF 19 at Ex. 1, p. 9.  In an effort to avoid confrontation, Poff and Lt. J. Shank attempted to talk with Dennis and Gallagher and asked them to uncover the window.  After Dennis reported he had tied Gallagher up and was going to rape him, the extraction team entered the cell.  *Id.*  Upon entering the cell, Younker pushed Dennis to the floor near the toilet using a shield.  Once Dennis was on the floor, Younker discarded the shield and held Dennis face down on the floor with both hands on Dennis's shoulders.  Lt. Shank then placed both his hands in the middle of Dennis's back while Durboraw placed handcuffs on Dennis's wrists.  Gallagher was pinned against the wall by Bair and Fiorita; once Gallagher was secured against the wall, Bair put handcuffs on Gallagher.  Both Dennis and Gallagher were then escorted off the tier without further incident.  *Id.*  The use of force was characterized as a response to an urgent situation in light of Dennis's stated threat against Gallagher.  *Id.*  Dennis was asked for a statement for purposes of the Use of Force Report, but declined to provide one.  ECF 19 at Ex. 1, p. 22.

The video recording of Dennis and Gallagher's cell extraction begins with attempts to negotiate with Dennis.  Dennis is heard shouting at Poff and Lt. Shank, telling them to get away from his cell and that he would not come to the door to be handcuffed.  Dennis repeatedly shouted, "Come and get me," and ultimately made explicit remarks regarding sexual acts he intended to do to Gallagher, who he claimed was bound and gagged.  At that point, negotiations ceased and the cell extraction team is seen going into the cell and, after a brief period of time, Dennis and Gallagher were brought out in handcuffs.  The video recording does not capture the

actions taken inside the cell.  Neither Dennis nor Gallagher appeared to be injured when they exited the cell; and Gallagher appeared to have what could have been used as a gag around his neck.  ECF 19 at Ex. 3 (video, filed separately).

Medical records for Dennis indicate that Dennis reported injuries following the cell extraction, but upon examination by medical staff, no significant injuries were found.  ECF 19 at Ex. 13, pp. 27 – 39.  Dennis was seen by Rebecca Barnhart, RN, at MCTC on January 11, 2016, and reported that he had a "split lip and busted head" despite not resisting officers during the cell extraction.  *Id*. at p. 27.  Barnhart's assessment notes that Dennis had a "small abrasion to [his] inside lower lip" but that the "skin is not split."  *Id*.  She also noted a small area of "erythema" or redness on the center of his forehead with "no bruising or swelling present."  *Id*.  No other injuries were noted.

Following his transfer to Western Correctional Institution ("WCI"), Dennis continued to complain about injuries sustained during the MCTC cell extraction.  *See* ECF 19 at Ex. 13, pp. 29 - 31.  On January 20, 2016, he was seen by Heather Ritchie, RN, to whom Dennis reported he was beaten by correctional officers at MCTC.  *Id*. at p. 32.  Dennis complained of pain in his left leg and ankle and pain in his neck and nose.  *Id*.  Ritchie noted that while Dennis jerked away during examination of his ankle, there was no swelling present.  *Id*.  Dennis told Ritchie that he wanted x-rays done "per his lawyer's request" and Ritchie advised a request for an x-ray would be made, subject to further orders.  *Id*.

On February 3, 2016, Dennis was seen by Krista Bilak, RNP, and he again reported that he had been assaulted on January 11, 2016, by officers at MCTC.  *Id*. at p. 36.  At that time, Dennis was complaining of nasal pain, right side rib pain, and left ankle pain.  *Id*.  X-rays were ordered for Dennis's nose, ankle, and ribs and performed on February 10, 2016.  *Id*. at pp. 38 –

39. The results of those x-rays showed "no evidence of an acute fracture, dislocation or subluxation." *Id*. at p. 39.

**Standard of Review**

Summary judgment is governed by Federal Rule of Civil Procedure 56(a), which provides in part:

> The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.

The Supreme Court has clarified that this does not mean that any factual dispute will defeat the motion:

> By its very terms, this standard provides that the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact.

*Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 247-48 (1986).

"A party opposing a properly supported motion for summary judgment 'may not rest upon the mere allegations or denials of [his] pleadings,' but rather must 'set forth specific facts showing that there is a genuine issue for trial.'" *Bouchat v. Baltimore Ravens Football Club, Inc*., 346 F.3d 514, 525 (4th Cir. 2003) (alteration in original) (quoting former Fed. R. Civ. P. 56(e)). The court should "view the evidence in the light most favorable to . . . the nonmovant, and draw all inferences in her favor without weighing the evidence or assessing the witness credibility." *Dennis v. Columbia Colleton Med. Ctr., Inc*., 290 F.3d 639, 644-45 (4th Cir. 2002). The court must, however, also abide by the "affirmative obligation of the trial judge to prevent factually unsupported claims and defenses from proceeding to trial." *Bouchat*, 346 F.3d at 526 (internal quotation marks omitted) (quoting *Drewitt v. Pratt*, 999 F.2d 774, 778–79 (4th Cir. 1993), and citing *Celotex Corporation v. Catrett*, 477 U.S. 317, 323–24 (1986)).

**Analysis**

Whether force used by prison officials was excessive is determined by inquiring if "force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm." *Hudson v. McMillian*, 503 U.S. 1, 6-7 (1992). This court must look at the need for application of force; the relationship between that need and the amount of force applied; the extent of the injury inflicted; the extent of the threat to the safety of staff and inmates as reasonably perceived by prison officials; and any efforts made to temper the severity of the response. *Whitley v. Albers*, 475 U.S. 312, 321 (1986). The absence of significant injury alone is not dispositive of a claim of excessive force. *Wilkins v. Gaddy*, 559 U.S. 34 (2010). The extent of injury incurred is one factor indicative of whether or not the force used was necessary in a particular situation, but if force is applied maliciously and sadistically, liability is not avoided simply because the prisoner had the good fortune to escape serious harm. *Id*. at 38.

The undisputed evidence in this case establishes that there was a need for force occasioned by Dennis's refusal to comply with orders and stated threats against his cellmate. In addition, there is evidence of an organized effort to defy efforts to restore order among the inmates housed in the segregation unit at MCTC. The minimal injuries sustained by Dennis, when viewed in light of the serious threats to safety and security that existed at the time he was forcibly extracted from his cell, are evidence that the use of force was tempered and reasonable under the circumstances. The objective evidence presented vitiates any conceivable basis upon which a judgment could be rendered in Dennis's favor. Defendants are entitled to summary judgment on the claims raised.

A separate order follows.

January 5, 2017                                         /s/
                                        James K. Bredar
                                        United States District Judge